*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re L. S. VUKMIROVICH, Minor.

UNPUBLISHED
March 26, 2019

No. 344687
Oakland Circuit Court
Family Division
LC No. 2017-850541 - NA

Before: MURRAY, C.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

Respondent appeals by right the trial court order terminating his parental rights to his minor daughter, LSV, pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

On appeal from termination of parental rights proceedings, this Court reviews the trial court's factual findings under the clearly erroneous standard. MCR 3.977(K); *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000); *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). Only one ground for termination needs to be proven by clear and convincing evidence. *In re Trejo*, 462 Mich at 351; *In re Moss*, 301 Mich App 76, 88; 836 NW2d 182 (2013).

Respondent argues that there was not clear and convincing evidence to support the statutory grounds for termination of his parental rights. The statutory grounds for termination were MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

-1-

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[1]

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

LSV's mother died of cancer when LSV was 21 months old. Shortly before her death, respondent began a relationship with his mother-in-law, the child's maternal grandmother, and respondent moved in with her shortly after his wife's death, taking LSV with him. It was this volatile relationship (which led to marriage), and respondent's serious problems with alcohol, that led to these proceedings and the termination decision.

Respondent's treatment plan required parenting classes, individual counseling, taking a substance abuse assessment and following the recommendations, drug and alcohol screens, housing and legal income, a psychological evaluation, and providing necessities and financial aid for LSV. Despite being aware of the maternal grandmother's CPS history and the fact that her parental rights had been terminated due to neglect, alcoholism, and domestic violence, respondent had married her by the third hearing. The record shows that, during the 16 months of this case, respondent failed to substantially comply with the requirements of the treatment plan. He never completed counseling. He and his second wife moved from counselor to counselor. The counselors reported that respondent was not honest about the situation, and that respondent did not address his volatile relationship or alcohol abuse. During these proceedings respondent was twice arrested and convicted of drunk driving; he was on probation and awaiting sentencing at the time of the termination hearing. One arrest arose from a serious car accident where his vehicle crossed over a lane and smashed into a fence post, requiring towing. Respondent fled the scene and was highly intoxicated. The second drunk-driving arrest was for speeding and, again,

---

[1] MCL 712A.19b(3)(g) has been amended, effective June 12, 2018. See 2018 PA 58. Under the amended version, the words, "without regard to intent," have been removed. The amended version reads: "The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." The trial court relied on the earlier version of MCL 712A.19b(3)(g). Although the hearing regarding statutory grounds was held on April 13, 2018, and an order stating the statutory grounds for termination was entered April 25, 2018, the termination order was entered June 26, 2018, after the amendment became effective. Nonetheless, the error was harmless because the court properly found that at least one other statutory ground was properly established. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

leaving the scene. The maternal grandmother, i.e., respondent's wife, was the car passenger during both incidents. In addition, during these proceedings, the maternal grandmother had a drunk-driving arrest while respondent was her passenger.

The evidence supported the trial court's conclusion that respondent had not addressed his alcohol problem or his volatile marriage. With respect to his alcohol usage, respondent was required to provide screens, and the screens he took were negative.[2] His caseworker could not report that respondent had maintained sobriety for even one month during this case. At the termination hearing, respondent testified that he was attending AA, but did not produce documentation. He also denied having an alcohol problem and essentially claimed that he was cured and would never use alcohol again. Therefore, evidence supported a finding that the issue of alcohol abuse continued to exist.

The evidence also revealed that the relationship between respondent and the maternal grandmother continued to be dysfunctional and volatile, as witnessed by the workers and others. It remained that way throughout the proceedings. The evidence also showed that respondent had failed to remedy many other deficiencies during the proceedings. For instance, the evidence showed that he had no driver's license, that he was at least $7,000 behind in child support, and that he provided no other material goods for LSV. Although respondent completed a parenting class, his visitation (which never went beyond supervised) had been sporadic, and he often either failed to notify the caregivers that he would not attend visitation, or waited until the last minute to do so. Importantly, the evidence supported the conclusion that respondent never took responsibility for the situation that led to the child's removal, and that he had difficulty complying with all the terms of probation, and maintaining consistent employment.

Based on the above evidence, and the undisputed fact that the termination hearing was held more than 182 days after the initial dispositional order, we hold that the trial court did not clearly err in finding that there was clear and convincing evidence that the conditions that led to the adjudication continued to exist and there was no reasonable likelihood that they would be rectified within a reasonable time considering the child's age. MCL 712A.19b(3)(c)(*i*).

A parent's failure to comply with his or her service plan is evidence that the parent will not be able to provide a child with proper care and custody and that the child may be harmed if returned to the parent's home. *In re White*, 303 Mich App 701, 710-711; 846 NW2d 61 (2014). Based on the record evidence, we conclude that there was clear and convincing evidence to support a finding that there was a reasonable likelihood, based on respondent's conduct, that his child would be harmed if returned to him. MCL 712A.19b(3)(j). Specifically, the evidence strongly supports the conclusion that respondent failed to provide proper care and custody for his daughter while she was in his care. After LSV's mother died, respondent spent most of his days sleeping and his nights drinking in a locked bedroom with the maternal grandmother. For the majority of her life, the child lived with her maternal grandfather, including when respondent had lived there with the child's mother and again with the maternal grandmother. After 16 months, respondent still was not able to provide proper care and custody for the child. He had failed to

---

[2] We recognize that two missed screens occurred while he was incarcerated for drunk driving.

rectify or address his alcohol and domestic violence problems, and he was not able to pay his current bills, let alone provide a home and necessities for his child. Respondent continued a relationship that was severely detrimental to the mental and physical health of his child. The trial court did not clearly err in finding clear and convincing evidence to support the statutory grounds for termination of respondent's parental rights.

The trial court also did not clearly err in finding by a preponderance of the evidence that termination of his parental rights was in the best interests of the child. Once the petitioner has established a statutory ground for termination by clear and convincing evidence, the trial court must find that termination is in the child's best interests before it can order termination of parental rights. MCL 712A.19b(5). Whether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App at 88-90. This Court reviews a trial court's decision regarding a child's best interests for clear error. *In re Laster*, 303 Mich App 485, 496; 845 NW2d 540 (2013). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App at 264.

The trial court must weigh the evidence available on the whole record in determining the child's best interests. *In re Trejo*, 462 Mich at 356. It may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). Other considerations include the length of time the child has been in foster care or placed with relatives and the likelihood that "the child could be returned to her parents' home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). In *In re Moss*, 301 Mich App at 88-89, the Court held:

> [O]nce a statutory ground for termination is established, i.e., the parent has been found unfit, the focus shifts to the child and the issue is whether parental rights *should* be terminated, not whether they *can* be terminated. Accordingly, at the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has.

The evidence clearly showed that respondent put his volatile and disastrous relationship with the maternal grandmother above any relationship he had with LSV, and during that relationship he was unable to properly care for LSV. It was equally clear that respondent was not willing to accept responsibility for his actions, acknowledge his problems, or work to overcome his issues. LSV had lost her mother, had been moved around several times to different homes, had repeatedly experienced neglect by her alcoholic father, had witnessed domestic violence, and had to deal with the confusing fact that her grandmother was now her stepmother. LSV needed permanency and stability. She was now in a loving home with her maternal grandfather, who wanted to adopt her. She was an intelligent child who had voiced her desire, over and over, to stay with her maternal grandfather. The trial court clearly expressed all of the reasons why it was in LSV's best interests for respondent's parental rights to be terminated, and its findings were not clearly erroneous.

Affirmed.

/s/ Christopher M. Murray
/s/ Michael F. Gadola
/s/ Jonathan Tukel